**TOWN OF JAFFREY, Plaintiff,**

v.

**TOWN OF FITZWILLIAM, Town of Dublin, Town of Rindge, D.D. Bean & Sons Co., New Hampshire Ball Bearing, Inc., Defendants.**

No. C–93–49–M.

United States District Court,
D. New Hampshire.

Feb. 7, 1994.

Eleanor H. MacLellan, Concord, NH, for plaintiff.

R. James Steiner, Concord, NH, John R. Falby, Jr., Peterborough, NH, James G. Walker, Manchester, NH, Frederic K. Upton, Robert W. Upton, II, Concord, NH, Michael C. Harvell, Portsmouth, NH, Arnold R. Falk, Keene, NH, Charles P. Bauer, Concord, NH, for defendants.

## ORDER

McAULIFFE, District Judge.

Plaintiff Town of Jaffrey, a New Hampshire municipal corporation, brings this consolidated action against five defendants: two New Hampshire business corporations—D.D. Bean & Sons Co. ("Bean") and New Hampshire Ball Bearing ("N.H. Ball Bearing")—and three New Hampshire municipal corporations—the Towns of Dublin, Fitzwilliam, and Rindge. Jaffrey asserts eleven separate claims for relief arising from hazardous waste contamination at the Town's landfill and the resulting state mandated closure of the site. In two of the eleven claims, Jaffrey seeks response costs and contribution pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq. The remaining nine claims arise under state statutory and common law.

Defendant Bean moves to dismiss Jaffrey's nine state claims on grounds that the court's exercise of supplemental jurisdiction over these claims would be inappropriate. Bean also moves to strike plaintiff's demand for a jury trial insofar as it relates to the CERCLA claims. Defendants N.H. Ball Bearing and Town of Dublin join defendant Bean's motions.

## I. Background

On February 2, 1990, the New Hampshire Department of Environmental Services, Waste Management Division (WMD), notified Jaffrey of the presence of on-site contamination of the groundwater at Jaffrey's solid waste landfill and contamination of neighboring properties. WMD ordered Jaffrey to apply for a Groundwater Discharge Permit, to submit a plan for closure of the landfill within sixty days, and to complete the closure by November 1, 1991. Among the hazardous wastes contaminating the Jaffrey landfill are oils, solvents, degreasers, and other volatile organic compounds. Consolidated Complaint, ¶¶ 13–14. Jaffrey estimates that the total cost of complying with

the WMD order and related expenses will be approximately $1.225 million. *Id.* at ¶ 22.

Jaffrey alleges that each defendant named in the complaint deposited hazardous waste at the landfill and asserts claims against each defendant for reimbursement under CERCLA § 107(a)(4)(B), contribution under CERCLA § 113(f), violation of N.H. RSA 147–B:10 (contribution), violation of N.H. RSA 146–A (oil spillage in public waters), negligence, negligence per se, strict liability, public and private nuisance, trespass, and breach of implied and express contract.[1]

This court has original jurisdiction over plaintiff's federal CERCLA claims pursuant to 42 U.S.C. §§ 9607(a), 9613(b) and 28 U.S.C. § 1331. While defendant Bean concedes that the court has the power to exercise pendent, or supplemental, jurisdiction, *see United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); 28 U.S.C. § 1367(a), Bean argues that the court should, in its discretion, decline to exercise supplemental jurisdiction over plaintiff's state law claims.

## II. Supplemental Jurisdiction

In 1990, the doctrines of "pendent" and "ancillary" jurisdiction were codified under the name of "supplemental jurisdiction" at 28 U.S.C. § 1367. Section 1367(a) provides that if a federal district court has original jurisdiction of a claim, the court

> shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). This broad jurisdictional mandate is subject to the provisions of subsection (c) which permits the discretionary rejection of supplemental jurisdiction under certain specified circumstances. Section 1367(c) provides that a district court

---

1. The first nine claims for relief apply to each defendant. Plaintiff's tenth claim for breach of implied contract applies only to defendants Bean and N.H. Ball Bearing. The eleventh claim for breach of express and implied contract applies only to defendants Dublin, Fitzwilliam, and Rindge.

may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Section 1367(c) appears to codify the bases for declining jurisdiction described by the Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966):

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.... Finally, there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims

for trial. If so, jurisdiction should ordinarily be refused.

*Gibbs*, 383 U.S. at 726–27, 86 S.Ct. at 1139–40 (footnote and citations omitted).

In urging the court to decline supplemental jurisdiction over Jaffrey's nine state law claims, defendant Bean argues that the claims substantially predominate over Jaffrey's federal CERCLA claims; the claims raise novel or complex issues of state law; and other compelling reasons exist to justify dismissal of the state claims.

### A. Predomination of State Claims

■ Jaffrey's state law claims are sufficiently "related" to its federal claims for jurisdictional purposes. *See* 28 U.S.C. § 1367(a), *supra; Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138 ("The state and federal claims must derive from a common nucleus of operative fact."). However, of the nine state claims, only one—the third claim for relief grounded on a violation of N.H. RSA 147–B—resembles CERCLA as to theory of liability and scope of available remedies.[2] Jaffrey's CERCLA claims are premised on strict liability. *See Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 889 F.2d 1146, 1150, 1158 (1st Cir.1989). The state law claims substantially broaden the scope of possible liability to include theories of negligence, nuisance, trespass, and breach of contract. Similarly, plaintiff's state claims are subject to a broad range of defenses including comparative negligence, statute of limitations, and complex statutory provisions for apportionment and contribution, *see* N.H. RSA 507:7–d, 7–e, 7–f, 7–g, that do not apply to the federal CERCLA claims. Under CERCLA, plaintiff's damages are limited to recovery of response costs, *see, e.g., Mesiti v. Microdot, Inc.,* 739 F.Supp. 57, 62 (D.N.H. 1990) (citing cases), while under state law theories plaintiff may be entitled to full compensatory damages and enhanced damages. Under these circumstances, Jaffrey's state law claims do substantially predominate over its federal claims. *Compare Commerce*

---

2. Jaffrey also asserts claims against each defendant for "strict liability" under N.H. RSA 146–A:3–a. However, that statute provides that *the state* may hold a party strictly liable for discharging oil into public groundwater; it does not authorize a private action for strict liability. *See Mesiti v. Microdot, Inc.,* 739 F.Supp. 57, 63 (D.N.H.1990).

*Holding Co. v. Buckstone,* 749 F.Supp. 441 (E.D.N.Y.1990) (state claims predominate) *and Dublin Scarboro Improvement Ass'n v. Harford County,* 678 F.Supp. 129 (D.Md. 1988) (same) *with Arawana Mills Co. v. United Technologies Corp.,* 795 F.Supp. 1238 (D.Conn.1992) (state claims do not predominate) *and Sheaffer Eaton, Inc. v. Textron, Inc.,* No. 4:91–CV–73, 1992 U.S.Dist. LEXIS 8687 (W.D.Mich. Feb. 18, 1992) (same).

## B. Novel or Complex Issues of State Law

Bean also points to several questions of state law which it says are novel or complex and which this court may be required to resolve. These include whether a claim for negligence per se may be predicated on violation of a standard of conduct established by N.H. RSA 146–A; whether New Hampshire common law permits an action for strict liability based on injury resulting from an abnormally dangerous activity[3]; and whether nuisance lies when the challenged conduct occurs on plaintiff's own property[4]. Jaffrey generally denies that its state claims will require resolution of novel or complex issues of state law, but does not address the specific questions raised by Bean. Whether truly "novel" or "complex," the court is satisfied that these questions are sufficiently unsettled that a more appropriate course would be to allow the state courts an opportunity to render "a surer-footed reading of [the] applicable law." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139.

## C. Other Compelling Reasons for Declining Jurisdiction

In addition, Bean argues that jurors are likely to be confused by the various theories of liability raised in Jaffrey's complaint. Juror confusion is one of the recognized grounds justifying federal court rejection of supplemental jurisdiction over state claims. *See Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139.

Plaintiff's complaint asserts not only multiple claims for relief but also several divergent theories of liability. Juror confusion is a distinct possibility whether the state claims are tried in federal or state court. However, the likelihood of confusion may be reduced if the state law claims are resolved separately from the federal CERCLA claims.

Bean also notes that plaintiff is entitled to a jury trial on its state law claims but not on its CERCLA claims. *See, e.g., United States v. Mottolo,* 605 F.Supp. 898, 913 (D.N.H. 1985); *Wehner v. Syntex Corp.,* 618 F.Supp. 37, 37 (E.D.Mo.1984). One of CERCLA's primary goals is the prompt and effective determination of the obligations of responsible parties. *See, e.g., Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1081 (1st Cir.1986); *Dublin Scarboro,* 678 F.Supp. at 131–32 (citing legislative history). Obviously, a bench trial on the federal CERCLA claims alone will prove far more expedient than a combined bench and jury trial on all federal and state claims raised in the complaint. In this case, the court's exercise of supplemental jurisdiction over Jaffrey's state law claims would tend to undermine the goals of the federal legislation.[5]

## III. Conclusion

For the reasons stated, the court declines to exercise supplemental jurisdiction over plaintiff Jaffrey's state law claims. Jaffrey's nine state claims (paragraphs 48 through 150 of the Consolidated Complaint) and all requests for relief pursuant to these claims are dismissed without prejudice. (document no. 17).

The considerations supporting the court's rejection of supplemental jurisdiction over Jaffrey's state law claims also warrant dismissal of pending counterclaims and cross claims arising under state law. All state law counterclaims and cross claims asserted by the three municipal defendants are hereby

---

3. *See Bagley v. Controlled Environment Corp.,* 127 N.H. 556, 503 A.2d 823 (1986).

4. *See Philadelphia Electric Co. v. Hercules, Inc.,* 762 F.2d 303 (3rd Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985).

5. The state claims in this case are not so closely related to questions of federal policy that considerations of judicial economy, convenience, and fairness dictate the exercise of supplemental jurisdiction. *Cf. Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139 (state claims implicated the issue of federal pre-emption).

dismissed without prejudice. (*see* document no. 32.1).

■ Plaintiff is not entitled to a jury on its federal CERCLA claims. *See supra.* The state claims having been dismissed, Bean's motion to strike the jury demand from the complaint (document no. 17) is granted.

SO ORDERED.